## Nelson H. Wing v. Margaret Railey and others.

*Mortgage; agreement to re-assign. Consideration.*—A. assigned to B. a mortgage for $150 on lands of which A. owned the title, and guaranteed the payment thereof. Subsequently B. agreed for the sum of $250, payable in instalments, to re-assign the mortgage, and to convey another parcel of land. A. paid $200 on the contract, and the last mentioned parcel of land was, by his consent, sold by B. for $500. *Held,* that on receiving this sum, B. was bound to re-assign the mortgage, and account for the balance not necessary to pay up the contract.

A subsequent agreement, obtained from A. without consideration, to relinquish these rights, and to pay the mortgage, was held inequitable, and the Court refused to enforce it, or to allow B. to foreclose the mortgage, and dismissed his bill.

*Heard October 31st, 1865. Decided January 5th.*

Appeal in Chancery from Livingston Circuit.

This was a bill of foreclosure, founded on a mortgage, made

by Consider Crapo to Hugh Railey, dated February 28th, 1838, and assigned by Railey to Wing, the complainant, May 27th, 1840.

The origin of the mortgage seems to have been in an exchange of farms between Crapo and Railey, by which Crapo was to secure to Railey about $200 as boot money; that Crapo gave to Railey notes and a mortgage to secure that sum, and that by mistake Crapo mortgaged to Railey the land which he transferred to him, instead of that which he received from Railey in the exchange.

The defenses set up were 1st, that the mortgage never had any validity, because before its execution, Crapo had conveyed all his title to the mortgaged premises, and that the same were inserted by mistake in the mortgage; 2d, that nothing remained due.

The bill was dismissed by the Court below.

*Geo. V. N. Lothrop,* for complainant:

1. Neither Railey nor his heirs can deny the validity of this mortgage. Though the fee of all the land afterwards came to Railey, yet it does not necessarily follow that the mortgage would thereby be extinguished. Equity will, in many cases, enable the owner of the fee to keep a mortgage outstanding. —1 *Washb. R. Prop.* 564.

This mortgage is, as against Railey and his heirs, as valid as if made by Railey himself. He and they are estopped to deny its validity. By his assignment, Railey expressly held the mortgage out as a valid security for the sum of one hundred and fifty dollars as principal and interest thereon, and guaranteed the payment thereof. This makes this mortgage, under the circumstances, in effect, as if made by Railey himself, for it is clear, that if the owner of the fee sells a mortgage on his own property as a valid security, equity will give it the same effect as if made by him. His assignment declared that the mortgage was a valid security on the land to a certain extent. This Court holds a mortgage to be only a lien, and not a grant of the title.—12 *Mich.* 270.

WING *v.* RAILEY.

Railey could not deny the validity of the mortgage, after holding it out as such and selling it as such. To allow him to do so, would be to allow him to take advantage of his own wrong. — 10 *Paige*, 326, 490; 6 *Hill*, 492; 29 *Barb.*. 569; 15 *N. Y.* 575; 4 *B. & Ald.* 212; 2 *T. R.* 171; 5 *Ohio*, 194; 7 *Conn.* 214; 13 *Vt.* 158; 12 *Johns.* 201; 2 *Serg. & R.* 507.

2. The notes and mortgage are produced. There is no proof tending to show payment, and Railey admitted in 1853 that the debt was not paid.

The particular mode by which this mortgage was to be discharged had failed, and therefore it was left in full force.

*H. H. Harmon* and *C. I. Walker*, for defendants:

The evidence introduced shows that the complainant has received the full amount of the mortgage from Hugh Railey, and that the representatives of the latter are equitably entitled to an assignment of the same. May 20th, 1844, Wing gave his bond to Hugh Railey, agreeing for $300, to be paid in four equal instalments, to sell to the latter certain land in Washtenaw county, and also to assign to Railey the very mortgage in question. By a clause in this agreement Railey, in case of failure to perform to the uttermost, is to forfeit all he has paid for the land and mortgage. This forfeiture is in the nature of a penalty, which no court of equity would ever enforce.

Under this agreement the deceased, Hugh Railey, paid the full amount of three of said notes, in accordance with the literal terms of the contract.

On the 8th of April, 1844, Railey had paid on his contract more than was then due on this mortgage. Upon the payment of $75, and interest from that date on or after the 20th day of May, 1848, (the time when the note of $75 became due,) a court of equity would, as between the complainant and said Railey, have enforced the specific performance; that

is, would have compelled the complainant to deed the land described in the contract and to assign this mortgage.

The equitable right of Railey to this deed and assignment, upon the payment of said seventy-five dollars and interest, continued after the last note became due, and could be barred only by a bill in equity brought for that purpose, or by the lapse of time.

While such were the equitable rights existing as between the said parties, complainant sold the said land, in the town of Webster, subject to the equitable rights of Railey therein, and the purchase price thereof, belonged to the latter, subject only to a deduction for the expenses of sale. The amount received was far more than the sum due on said bond, so that, instead of any sum being due the complainant at the time of filing his bill, an accounting would show him in debt to the representatives of Railey.

CAMPBELL J.

In February, 1838, one Consider Crapo bought certain lands of Hugh Railey, and to pay for them was to convey two parcels of land, and to give a mortgage on other lands for $200. By mistake he gave a mortgage covering three parcels, two of which were the same he had already bargained to convey to Railey. One of the parcels was deeded the same day, and the other subsequently. Railey assigned $150, then remaining due on this mortgage to Wing, in May 1839, the mistake not having then been discovered, and the deeds to Railey not having been recorded. Railey also guaranteed the payment of the notes and mortgage. Wing now seeks to foreclose it against Railey's heirs, Railey and Crapo being both dead.

In May, 1844, Wing gave his bond to Railey agreeing for the sum of $250, payable in four annual payments, to re-assign the Crapo mortgage, and to convey to Railey a lot of land in Washtenaw county. Three of these payments were made upon maturity. Whether the fourth payment was made does

not appear. The note for it is not produced. June 4th, 1853, Wing sold the Washtenaw lot, Railey joining in the deed, and received $500 for it. He then tried to get Railey to sign an instrument giving Wing a right to apply this money as he pleased, on any debts of Railey alone, or with others, and on the Crapo mortgage as an indebtedness to Wing. The bond from Wing, provided that on failure to pay any part of the $250, Railey should still be liable to pay that deficiency, lose the land, and pay the whole Crapo mortgage; and this attempt has the appearance of trying to enforce that forfeiture. Railey, however, would not sign the document. On the 6th of June a document is produced, claimed and perhaps proved to have been signed by Railey, whereby in consideration of fifty dollars he agrees to give up all his rights under Wing's bond, and also agrees to pay Wing the Crapo mortgage. It appears that instead of receiving anything from Wing on that day, he paid Wing twenty-five dollars.

By the sale of the Washtenaw lands, the balance due from Railey on this bond was paid, and he was entitled to demand from Wing his mortgage, and a balance in cash of about four hundred dollars. There is no evidence showing by what process Wing managed to get back from him this peculiar document. It appears affirmatively that there was no new consideration.

In the absence of clear proof we shall not characterize this performance as a fraud, but we think a party who seeks to rely upon it must seek some other forum than a Court of Equity.

The bill was properly dismissed. The decree must be affirmed, with costs.

COOLEY and CHRISTIANCY JJ. concurred.